## BERNARD BLAKE v. GORDON DENELSBECK.

170 N. W. (2d) 337.

August 29, 1969—No. 41451.

*Winter, Lundquist, Sherwood & Pedersen* and *Bruce E. Sherwood,* for appellant.

*Rischmiller & Wasche* and *Robert William Rischmiller,* for respondent.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Frank T. Gallagher, JJ.

FRANK T. GALLAGHER, JUSTICE.

Appeal from an order of the district court denying plaintiff's motion for a new trial on the ground of newly discovered evidence.

This suit arose out of a collision between two virtually identical aircraft (1958 and 1959 Cessna 172's) while both were attempting to land at the airport in Madison, Minnesota. The defendant, Gordon Denelsbeck, was alone in his plane and the plaintiff, Bernard Blake, was an instructor-passenger in a plane piloted by one Donald Pederson. The collision occurred just south of the north-south runway of the Madison airport when defendant's plane struck the Pederson plane from above.

Defendant was flying north from Canby, Minnesota, to Madison to take a flying lesson from plaintiff. Defendant was a licensed pilot with approximately 42 hours of flying time. He approached the airport from the south and flew past it 1/4 to 1/2 mile to the east of the airport at a height of 1900 feet indicated, or about 800 feet actual. (The altimeter in the plane measures height above sea level and since the Madison airport is about 1100 feet above sea level the plane was actually about 800 feet off the ground.) This is the prescribed landing pattern altitude for the airport. Defendant was traveling at about 110 miles per hour indicated air speed. Upon reaching a point 1/4 to 1/2 mile north of the airport, defendant made a 90-degree turn to the left and flew west until he was, in his best judgment, about 1/2 mile west of the airport. He then made another 90-degree left turn and headed south, parallel to the north-south runway. This flight south constituted the downwind leg of his landing

pattern. Defendant maintained the 110-miles-per-hour air speed until about halfway through his downwind leg, at which time he began to reduce speed, so that on his final approach he was traveling about 70 miles per hour and slowing to land. According to his best judgment defendant was about 1/2 mile south of the airport when he made a 90-degree banking left turn and headed east. When he was even with the north-south runway he again turned 90 degrees left and headed north on his final approach to land. About a second before the crash, defendant saw what he believed to be the tip of a wing below him on his left, but he stated there was no time to react before the planes collided.

Prior to the collision, Pederson was practicing takeoffs and landings preparatory to soloing for the first time. He had completed about five such maneuvers, stopping completely each time. On the last landing he did not stop, but simply continued down the runway and took off again. His plane headed north about 1/2 mile, climbing to about 350 feet. He then turned left (west) for about 1/2 mile, traveling at about 85 miles per hour and climbing to 650 feet. He again turned 90 degrees left and headed south on the downwind leg of an approach pattern, having reached an altitude of 800 feet. On the downwind leg his air speed increased to about 95 miles per hour and then slowed to 80 miles per hour as he prepared to land. About 1/4 mile south of the airport, he headed east by executing another 90-degree left turn. When he was even with the north-south runway he turned left again and headed north on his final approach. Just before the crash both Pederson and plaintiff heard a loud noise above them.

Defendant, plaintiff, and Pederson testified at the trial. Each indicated he had kept a careful lookout while in the air and at no time saw the other plane. All agreed that the type of plane involved had blind spots above and below and to the rear and that the overhead wing blocked portions of the visibility as the plane banked on turns. This type of plane has no rear window and a

solid floor. The engine is in front of the cockpit. There was nothing improper in the landing-pattern procedure used by either plane. The weather was clear and bright with little or no wind. The two planes involved were the only two in the immediate area.

The jury returned a verdict for defendant, and plaintiff concedes on appeal that the evidence presented during the trial was not sufficient to sustain his burden of proof. The jury could only speculate as to whether either, both, or neither of the parties was at fault. Plaintiff's plane could have entered the final approach after defendant's and come up underneath it just as easily as defendant coming in on top of plaintiff. Also, with the possible blind spots in the type of plane involved the collision might have been a freak accident such that even though landing patterns are intended to give pilots a complete view of the area prior to landing these two planes were never visible to each other during their approach.

According to the testimony of the persons in the planes, the only differences between the patterns followed by the two planes were either before the downwind leg, in speed, or in distance from the south end of the runway at the time they turned east into the base leg of the approach. On this last point, plaintiff and Pederson testified that they were about 1/4 mile south of the field when they made their turn, and defendant testified that he was 1/2 mile south when he made his approach.

Prior to the time of trial, plaintiff's counsel made an investigation and there were inquiries and investigations by the Madison police, the Lac Qui Parle county sheriff's office, and the Civil Aeronautics Board. None of these investigations produced an eyewitness to the accident or to the events leading up to it. However, following the verdict, plaintiff's counsel was notified that there was a witness to part of the events preceding the collision. A Mrs. A. Hofstad resided on a farm 1/4 mile due south of the north-south runway and, according to her affidavit, was leaving her home just as the two planes involved passed over her house. Mrs. Hofstad states in her affidavit that she observed one plane

424

directly overhead and another somewhat higher and farther south, and although she cannot estimate the distance between the planes in terms of feet, she did recall that the trailing plane was over a grove of trees on a specific piece of property. On the basis of this affidavit and those of his counsel setting out the extent of their prior investigation, plaintiff moved for a new trial on the ground of newly discovered evidence, and also for a judgment notwithstanding the verdict. The trial court denied the motion in an order without an accompanying memorandum indicating the grounds for denial. Plaintiff appeals from this order.

On appeal plaintiff raises only one issue: Whether the trial court erred in denying plaintiff's motion for a new trial.

Rule 59.01, Rules of Civil Procedure, provides in part:

"A new trial may be granted to all or any of the parties and on all or part of the issues for any of the following causes:

\* \* \* \* \*

"(4) Material evidence, newly discovered, which with reasonable diligence could not have been found and produced at the trial."

While it is not entirely clear what constitutes reasonable diligence in the discovery of evidence, it is clear that—

"\* \* \* if the same diligence which led to the discovery of the new evidence after trial would have led to discovery had such diligence been exercised before trial, a new trial need not be granted." Caballero v. Richfield Wood-Working Co. 246 Minn. 124, 131, 74 N. W. (2d) 404, 409.

The record indicates that three separate investigations were conducted prior to trial—by plaintiff's attorneys, by the Madison police and the county sheriff, and by the Civil Aeronautics Board. None of these uncovered the existence of the witness, Mrs. Hofstad. According to the affidavits, plaintiff's attorneys contacted all known parties involved in or doing investigative work and questioned them not only as to knowledge of the accident but

also as to knowledge of other persons who might have information. We hold that this sufficiently demonstrates the exercise of due diligence on the part of plaintiff to comply with Rule 59.01(4).

It is clear from the evidence that defendant began the final leg of his approach from a point farther south than did Pederson, with whom plaintiff was riding. What the evidence offered at trial did not establish is the time sequence of the events preceding the accident and the relative positions of the planes during most of the landing approach. From the affidavit of Mrs. Hofstad, it appears that her testimony, if believed, would establish that while both planes were at least 1/4 mile from the runway and headed north to land, defendant's plane was above and behind that of Pederson and plaintiff. Further, because she can establish the approximate position of defendant's plane by a landmark (a particular grove of trees) and the location of plaintiff's plane as directly over her, the distance between the two planes can be determined on the basis of her testimony. Because the distance might be sufficient to allow defendant to see plaintiff's plane below and ahead of him, Mrs. Hofstad's testimony might well change the jury's verdict.

It is clear that the newly discovered evidence is not impeaching in nature. It is consistent with the undisputed testimony of both plaintiff and defendant. Defendant contends that it is cumulative in that it indicates only that the two planes were both headed north to land and that defendant's plane was above and behind plaintiff's at the early stage of the final approach. This position concedes the interpretation of the evidence most favorable to plaintiff, since it is also possible to argue from the testimony that plaintiff flew in under defendant. The point that defendant overlooks in his argument is that the evidence may provide a basis on which to determine *how far* behind plaintiff defendant was as they both entered the final approach pattern. Therefore, it is not cumulative.

It should also be noted that where the evidence is not cumula-

tive the permissible scope of the trial court's discretion is somewhat less. Where the evidence may be considered cumulative the trial judge must consider whether as a weight-of-the-evidence matter the newly discovered evidence will swing the balance in favor of the moving party. This is obviously a matter on which the trial court is best able to act. Where the evidence is not cumulative its probative weight may be more objectively assessed and less weight need be given to the trial court's determination.

Accordingly, we conclude on the present record that a new trial should be granted to plaintiff.

Reversed and new trial granted.